## HORN v. BARRAS.
### No. 1670.

Court of Appeal of Louisiana.   First Circuit.
Feb. 12, 1937.

Bruner & Chambers, of Crowley, for appellant.

F. Xavier Mouton, of Lafayette, for appellee.

452

LE BLANC, Judge.

This is a damage suit growing out of an automobile accident, in which the demands of the plaintiff were rejected by the judgment rendered in the lower court, and his suit was dismissed. The defendant had reconvened for damages also, but the judgment likewise rejected the reconventional demand and dismissed the same. The plaintiff appealed, but defendant did not; neither did he answer plaintiff's appeal. That part of the judgment which dismissed the reconventional demand therefore is not before us for review.

The accident occurred on the night of August 8, 1934, when plaintiff's car, which was being driven at the time by his brother, A. F. Horn, Jr., ran into a large freight truck of the defendant which was parked on the paved highway about five miles east of Crowley, La., in Acadia parish. The truck, which weighed 15,000 pounds, was loaded with 100 pockets of rice weighing 100 pounds each, making a total weight of 12½ tons. It had taken on this load of rice in Crowley late that evening, and was on its way to deliver it at Lafayette. Not long after the truck left Crowley a very hard rain and windstorm arose, and when it reached the point mentioned on the highway, the motor stalled and the driver was unable to get it started again. He left it parked on the highway and went to Lafayette to secure assistance in getting it started. It was during his absence that plaintiff's car, traveling in the same direction in which the truck was headed, ran into the rear of it and the damage complained of was thereby occasioned.

It is alleged in plaintiff's petition, and shown to be a fact which is not disputed, that there was a young man riding with the driver, in the truck, and in addition to charging the driver with negligence in having left the truck parked on the highway without a taillight burning or placing other appropriate signal lights to warn approaching traffic, it is contended that this young man who remained seated in the cab during all the time the driver was away, could have warned the traffic of the truck's presence on the highway. Another particular in which the driver of defendant's truck is charged with negligence is in having parked the truck in violation of section 3, subdivision (a) of rule 15 of the state regulatory highway act (Act No. 21 of 1932), which requires a person who parks or leaves standing any vehicle on the highway, whether attended or unattended, to leave an unobstructed width of not less than 15 feet on the main-traveled portion of the highway, opposite the standing vehicle, for the free passage of other vehicles thereon.

As already mentioned, plaintiff's car, an Oldsmobile coach, practically new at the time, was being driven by his brother, A. F. Horn, Jr. They, with Mrs. Bernice Terrell, as a guest passenger, all occupied the front seat. Plaintiff alleges in his petition that as a result of the impact of his car with the truck, he was thrown violently forward in his car, his head striking the windshield and frame, and his knees the dashboard. He claims to have suffered severe lacerations of the forehead and scalp, injuries to his knees, broken teeth, and contusions over the body generally. For his pain and suffering and disfigurement resulting from the injuries, he claims damages in the sum of $5,250. For medical and other expenses incidental to his treatment, the sum of $119.75. He alleges that his car was almost completely demolished, but that he carried insurance on it for the full amount of the repairs beyond $50. The $50 deduction, however, he claims he is entitled to recover as damages, from the defendant. In addition thereto, he claims the sum of $10 for wrecker service, and, finally, he claims $80 for loss of time from his business. All told, therefore, the demand is for the sum of $5,509.75.

The answer of the defendant consists first of a denial that the truck driver was negligent and violated the provisions of the state highway act as alleged by plaintiff, and an affirmative defense that he left the truck parked with all signal lights, that is, two front lights, two clearance side lights, and one taillight burning, and that he was justified in leaving it parked on the paved portion of the highway after it became disabled in an emergency, under the provisions of section 3, subd. (c) of rule 15 of the state highway regulatory act hereinbefore mentioned; and, second, a plea of contributory negligence against the plaintiff which would bar his recovery even though defendant's truck driver be shown to have been negligent. The plea of contributory negligence is based on a charge that plaintiff's car was being driven and operated at a reckless and excessive rate of speed, considering the weather con-

ditions, and that the driver either saw or should have seen the lights burning on the parked truck; that if he saw the truck and was not able to stop his car in time to avoid running into it, it was because he was not keeping the proper lookout and did not have the car under such control as to be able to stop it within the range of vision projected in front of him by his own headlights, to all of which negligence, plaintiff himself contributed by not keeping a proper lookout himself and by permitting the driver to operate his car in such manner under the conditions then existing.

The district judge did not assign written reasons for judgment, and we have no way of knowing on what basis he reached the conclusions on which he rendered the same. Inasmuch as he rejected the defendant's reconventional demand, he evidently found the driver of the truck negligent. Assuming that he found the truck driver negligent, he must have dismissed the plaintiff's demand on the ground that he was guilty of contributory negligence.

■ Plaintiff's contention that the truck driver violated that provision of the highway regulatory act which required him to leave an unobstructed clearance of 15 feet on the side of the main-traveled portion of the road opposite his truck, is supported by the testimony which is undisputed to the extent that the clearance, at the very most, was only 11 feet. Defendant's contention is that his case presented the exception to the requirement as provided for in section 3, subd. (c) of the very same rule which is to the effect that the provision shall not apply to a vehicle which becomes disabled on that portion of the highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving it in such position. There can be no doubt from the testimony appearing in the record that because of the weather conditions prevailing at the moment, causing the motor of the truck to stop completely when the wires became wet, there was presented such an emergency as is contemplated under the section providing an exception to the general rule about leaving a truck parked or standing on the main portion of the highway. Plaintiff's argument that the driver might well have used the last sputtering sparks of the motor as power to propel the truck onto the shoulder alongside the pavement is met by an apt answer on the part of the driver

that he did not do so because he feared that the shoulder having become soft from the rainwater, the heavy truck might have skidded and he being unable to control it, it might have swerved around diagonally on the pavement and created a greater obstruction than by parking it horizontally.

■ In the exception under section 3, subd. (c) rule 15 allowing for the parking of a vehicle under an emergency, there is, however, this further provision: "It shall be the duty of the owner or driver of such vehicle to remove the same as soon as possible and until removed to protect traffic from same at his responsibility." It is plaintiff's contention that the truck driver was not diligent enough in trying to secure assistance in getting the motor started and removing the truck from the highway.

The testimony on that point is to the effect that after trying himself for some twenty minutes to start the motor, the driver hailed a passing car and went directly to Rayne to try to get a mechanic at one of the garages at that place. He called at one garage and was told that their men were all busy, so he proceeded 14 miles further to Lafayette, his employer's headquarters, and there got one of the mechanics to go out with him at once to the scene of the accident. It is shown that there were two garages in the town of Rayne and plaintiff's complaint is that the driver of the truck, in order to save time, should have requested assistance at both before going on to Lafayette. The truck stalled at about 7 o'clock and it was 9:20 when the driver returned with the mechanic, who dried the wires and started the motor. Allowing the 20 minutes consumed by the driver in his own effort to get the motor started, it is seen that he was gone two hours, which we do not think can be said to have been an unreasonable delay under the circumstances. As it appears doubtful that he could have secured assistance from the other garage in Rayne, whereas he was reasonably certain of obtaining it in Lafayette, it appears to us that he was reasonably diligent in the course he pursued.

■ If there was any negligence at all arising out of the violation of the rule laid down by the state highway act, we think that it was in the truck driver's failure to have protected traffic either by displaying the usual signal lights on the truck or by not having stationed the young man who was in the truck with him on the outside, to warn approaching vehicles of

the increased danger by reason of the obstruction on the highway, instead of having instructed him, as he did, to remain seated in the cab. Assuming that all signal lights were displayed on the truck, it is shown that this young man was 15 years of age and therefore fully capable of serving as a guard for further precaution under the circumstances. In imposing the duty on the driver of a vehicle which, through emergency, has to be parked on the main-traveled portion of the highway, to protect traffic at his responsibility, until it is removed, we think that the law intends that he should use all means of protection at his disposal. Where one might prove to be ineffective, another means available, but which he did not use, might have been the very warning required to avert an accident.

Under the views herein expressed, the truck driver would be held negligent, and plaintiff, as a result thereof, would be entitled to recover, were it not that we, as evidently did the district judge, have reached the conclusion that he was guilty of contributory negligence, which, under our law, stands as a bar to his recovery.

Plaintiff's car was a new Oldsmobile coach, having been in use for about three months prior to the accident. It was equipped with the latest, and what is considered the best and most effective brakes, those which operate by hydraulic pressure. The headlights were in first-class condition, and yet he and the two other occupants of the car that night, testify that they could not see much more than 20 feet ahead of them. Assuming that to be a fact, it furnishes proof from their own testimony as to how really bad the weather must have been and how dangerous it was to drive an automobile on the highway that night. And this, in spite of their testimony that when they left Crowley it was merely drizzling. If further proof be required as to the condition of the weather and the consequent hazard in driving, we get it from the testimony of Mrs. Charles W. Lyman and her daughter, Mrs. Dale Daniel, who also drove their car from Crowley to Lafayette that night and saw the parked truck on the highway, and also from that of Mrs. D. P. Egan and her daughter, Miss Leah Jane Egan, who were likewise on the road in their car and found it necessary to stop at a garage in Rayne to have the wires on the motor of their car dried because they were having trouble in driving. These last two ladies also drove past the truck which they say they could see standing on the highway.

The testimony of all these ladies regarding the difficulties they experienced in driving that night, as well as that of the occupants of the plaintiff's car that they could not see much further than 20 feet ahead of them, although the car had excellent lights, is sufficient to impress any one with the danger that existed and the necessity of using the utmost precaution. And yet, in spite of that, plaintiff and his witnesses testify that when they left Crowley, they set out at a speed of from 35 to 45 miles per hour; that on reaching a railroad grade crossing four miles east of Crowley, they slowed down because the road was graveled, and that upon regaining the paved road, they again advanced their speed to about 30 or 35 miles per hour. This speed was maintained until they met another car traveling west. This was at a distance which they estimate to be between 20 and 30 feet from where they ran into the parked truck. It was immediately after meeting this last car that they say they saw the truck standing on the highway for the first time, and that although A. F. Horn, Jr., the driver of their car, applied the brakes at once, he was unable to bring it to a stop and avoid running into the truck.

If, as plaintiff and his brother, and Mrs. Terrell say, they could not see much more than 20 feet ahead of them, it is evident that even at the rate of speed they say they were going, it was entirely too fast for them to be driving under the circumstances. There is a rule well formulated in jurisprudence that an automobile driver, at night, must drive at such speed and keep his car under such control as to be able to stop it within the distance which his headlights project in front of him. With a vision of only 20 or 25 feet ahead, we think that a speed of 30 to 35 miles would not permit a driver to maintain such control.

It may be, however, that plaintiff and his witnesses misstated the distance and that they could see a good number of feet more ahead of them. In that event, the question arises as to why they did not see the truck in time to stop or have the car under such control as to safely pass by it. In some cases, it has been shown that the driver became blinded by the lights of another car approaching from the opposite di-

rection and that was given as the reason for him not seeing the parked vehicle in time. But here, although plaintiff's car did meet a car 20 or 30 feet from the truck, the driver specifically states that he never was blinded by the lights on the car, as he is positive that its driver dimmed them as they approached each other.

The reason given in this case why the occupants of plaintiff's car were not able to see the truck before, was because of its drab color, which they say blended with the darkness of the pavement which was wet, and that it looked before them as an object on the highway just as they were upon it and unable to stop before running into it. When we consider the weight and size of that truck, the dimensions of the body being 7 feet 8 inches wide and 8 feet high, built solid all around, it is almost inconceivable how such an object could not be detected when approached by an automobile with good headlights shining, irrespective of its color.

But there is another most convincing reason why they should have seen it even though it was painted a dark color which blended with the color of the pavement, and that is because of the lights which were burning on it and which served as a warning of its presence on the highway. It was alleged in plaintiff's petition that the truck had no taillight burning on it and had no appropriate signal light to warn approaching traffic. He and his witnesses admit, however, that the side clearance lights were on, and whilst it is disputed that the taillight was burning, we are of the opinion that the preponderance of the testimony on this point, instead of being on plaintiff's side, as it should, is rather on the defendant's. The driver of the truck swears positively that he put on all the lights on the truck when it stalled and that when he left it, he withdrew the ignition key which controlled them all, and that it was impossible, with the system of lighting used, to turn them off without the key. Some of the ladies who passed by the truck while it was standing, testify that they saw the taillight as well as the other lights burning, and in corroboration of this, two or three witnesses who came to the scene of the accident after it happened, tested the wire leading to the taillight which had been broken by the smash of plaintiff's car into the rear of the truck, and electric current was found flowing through it.

The contributory negligence of the driver of plaintiff's car clearly appears from the record, as we read it, and as it is shown that plaintiff himself, who was seated on the front seat with the driver, had equal opportunity of seeing and observing the conditions which existed, was aware of the speed at which they were going and the distance they could see ahead of them, had entire control over the car, and yet permitted its operation in such manner, he also must be held negligent, and his negligence having contributed to the accident, stands in the way of his recovery.

The case is one which rests solely on issues of fact, and it is generally recognized that the trial judge's findings on such issues will be accorded great weight and will not be disturbed unless found to be manifestly erroneous. No manifest error has been pointed out, nor does any appear from the record that is before us. For these reasons and all others herein stated, the judgment appealed from is affirmed.